## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| **AMERICAN AIRLINES, INC.,** | |
| **Plaintiff,** | **Civil Action No. 4:23-cv-576** |
| **v.** | |
| **ADVANCED TRANSACTIONS, LLC,** | **JURY TRIAL** |
| **Defendant.** | |

### ORIGINAL COMPLAINT

Plaintiff American Airlines, Inc. ("American" or "Plaintiff") files this Original Complaint against Defendant Advanced Transactions, LLC ("Advanced Transactions" or "Defendant") and hereby alleges as follows:

### NATURE OF THE ACTION

1.      American files this declaratory judgment action for non-infringement of U.S. Patent Nos. 7,065,555 (the "'555 Patent"), 7,386,594 (the "'594 Patent"), 7,693,950 (the "'950 Patent"), 7,979,057 (the "'057 Patent"), 8,150,736 (the "'736 Patent"), 8,175,519 (the "'519 Patent"), 9,747,608 (the "'608 Patent"), and 10,783,529 (the "'529 Patent") (collectively, the "Patents") (attached as exhibits 1–8, respectively) under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 1 et seq., and for other relief the Court deems just and proper.

2.      On information and belief, Advanced Transactions is a patent "monetization" entity. Ex. 9 at 2. Advanced Transactions claims its Patents "broadly relate to online marketing and e-commerce systems." *Id.* at 2. On information and belief, Advanced Transactions pursues a

monetization strategy that minimizes the risk of subjecting its Patents to a substantial challenge. That is why Advanced Transactions has assiduously avoided asserting its Patents against the tech industry—the very industry that develops the kinds of products and services that relate to the Patents—and has, instead, targeted the tech industry's customers. On information and belief, Advanced Transactions further insulates its Patents from challenge by offering to license them for well below the cost to defend a patent infringement suit, which encourages quick settlement.

3.      This strategy has been on full display in recent cases Advanced Transactions has filed. For example, Advanced Transactions sued Fiesta Mart, LLC (a grocer) for infringement, but voluntarily dismissed its case about three months after filing. *Advanced Transactions, LLC v. Fiesta Mart, LLC et al.*, No. 6:22-cv-563 (W.D. Tex. Sept. 2, 2022) (Dkt. 21). Advanced Transactions did the same in a suit against Regis Corporation (a beauty salon company), again dismissing about three months after filing. *Advanced Transactions, LLC v. Regis Corporation et al.*, No. 6:22-cv-926 (W.D. Tex. Dec. 22, 2022) (Dkt. 16). And Advanced Transaction's suit against Marco's Pizza (a pizza restaurant) was no different, again dismissing about three months after filing. *Advanced Transactions, LLC v. Marco's Pizza Holdings, LLC et al.*, No. 2:22-cv-441 (E.D. Va. Jan. 6, 2023) (Dkt. 17). All in all, Advanced Transactions has filed at least seven lawsuits (six in a Texas federal court) asserting these Patents:

- *Advanced Transactions, LLC v. Belk, Inc. et al.*, No. 6:22-cv-176 (W.D. Tex. Feb. 18, 2022)

- *Advanced Transactions, LLC v. Fiesta Mart, LLC et al.*, No. 6:22-cv-563 (W.D. Tex. June 1, 2022)

- *Advanced Transactions, LLC v. Advanced Auto Parts, Inc. et al.*, No. 6:22-cv-775 (W.D. Tex. Jul. 12, 2022)

- *Advanced Transactions, LLC v. Regis Corporation et al.*, No. 6:22-cv-926 (W.D. Tex. Sep. 8, 2022)

- *Advanced Transactions, LLC v. Marcos Holdings, LLC et al.*, No. 1:22-cv-1197 (E.D. Va. Oct. 21, 2022)

- *Advanced Transactions, LLC v. The Gap, Inc.*, No. 6:23-cv-163 (W.D. Tex. Mar. 3, 2023)

- *Advanced Transactions, LLC v. AutoZone, Inc.*, No. 6:22-cv-270 (W.D. Tex. Apr. 12, 2023)

4.     On April 26, 2023, Advanced Transactions formally served American, through its registered agent, with a letter (the "Letter," attached as exhibit 9). The Letter accuses American's "marketing products and service offerings [of] infring[ing] one or more claims of the [Patents]." Ex. 9 at 2. The Letter further demands that American "enter into a licensing negotiation" no later than May 12, 2023, or face "a lawsuit." *Id.* Indeed, the Letter included a draft complaint accusing various American products and services of infringing at least one method claim of each of the Patents (the "Draft Complaint"). *See generally id.*

## PARTIES

5.     American is a Delaware corporation with its principal place of business at 1 Skyview Drive, Fort Worth, Texas 76155.

6.     On information and belief, Advanced Transactions is a Georgia limited liability company with at least some of its members, officers, employees, and/or agents located at the Day Building, Suite 230, 4725 Peachtree Corners Circle, Peachtree Corners, GA 30092.

3

## JURISDICTION AND VENUE

7.      American files this Complaint against Advanced Transactions pursuant to the patent laws of the United States, Title 35 of the United States Code, with a specific remedy sought based upon the laws authorizing actions for declaratory judgment in the federal courts of the United States, 28 U.S.C. §§ 2201 and 2202, and under the patent laws of the United States, 35 U.S.C. §§ 1–390.

8.      As evident by the facts alleged in this Complaint, this Court has subject matter jurisdiction over this action, which arises under the United States' patent laws, pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

9.      As evident by the facts alleged in this Complaint, this Court has both general and specific personal jurisdiction over Advanced Transactions.

10.     As evident by the facts alleged in this Complaint, this District is the proper venue under 29 U.S.C. § 1391(b).

11.     On information in belief, Advanced Transactions' exclusive business is licensing patents, and it continuously and systematically does so within Texas to such a degree that it is at home in this State. Of the seven-patent infringement suits Advanced Transactions has filed, six have been filed in a Texas federal court. Advanced Transactions has not filed one in a Georgia federal court.

12.     On information and belief, Advanced Transaction's members, officers, employees, and/or agents regularly send communications into and/or travel to Texas to advance its licensing business and it generates revenue from its licensing activities in Texas and in this District.

13.     On information and belief, Advanced Transactions (a) regularly solicits business from companies located in Texas and in this District, and (b) purposefully directs its patent enforcement activities at companies located in Texas and in this District. As mentioned above,

4

Advanced Transactions asserted the Patents against Fiesta Mart, LLC in a Texas federal court. Fiesta Mart, LLC has its principal place of business in Houston, Texas. *See Contact Us*, FIESTA, https://www.fiestamart.com/contact-us (last visited May 11, 2023). Further, Advanced Transactions purposefully directed the Letter into this District by addressing it to American's Chief Legal Officer, Priya Aiyar, who is located at American's headquarters in Fort Worth, Texas:



Ex. 9 at 2.

14.    On information and belief, Advanced Transactions regularly consents to litigate patent infringement suits in Texas. As explained above, at least some of its members, officers, employees, and/or agents are located in Georgia, yet it has repeatedly chosen a federal court in Texas to file complaints asserting the Patents. On information and belief, Advanced Transactions similarly intends to litigate in Texas its accusations that American infringes the Patents. The Draft Complaint is captioned in the Western District of Texas:

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

ADVANCED TRANSACTIONS, LLC,

Plaintiff,

v.

AMERICAN AIRLINES, INC.,

Defendant.

Case No.

Jury Trial Demanded

Ex. 9 at 4. Further, Advanced Transactions has already engaged a Texas licensed attorney to litigate a suit against American for infringement of the Patents, as evidenced by the Draft Complaint's signature block:

Dated: April __, 2023

Respectfully submitted,
[DRAFT] _____

Zachary H. Ellis*
Texas State Bar No. 24122606
zellis@daignaultiyer.com
Tel. 512-829-7992

Ex. 9 at 157.

15.     On information and belief, Advanced Transactions will suffer little to no burden having to litigate this suit in Texas. In addition to its extensive experience already litigating infringement of the Patents in this State, advances in technology—for example, electronic filing,

electronic mail, and video conferencing—have removed any remaining burden to Advanced Transactions facing a suit in this District.

16.     American has an interest in protecting itself from patent infringement accusations by obtaining relief from a nearby federal court in its home forum (Fort Worth).

17.     The State of Texas and this District have a well-defined interest in commerce and scientific development, as well as in protecting their residents from claims of patent infringement that may be unwarranted.

18.     On information and belief, litigating this suit in this District will be more efficient than in any other district. The substantial majority, if not all, of the documents, things, and witnesses required to litigate American's non-infringement are located at its headquarters in Fort Worth.

19.     A substantial part of the events giving rise to Advanced Transactions' accusations of infringement of the Patents have occurred in this District. The vast majority of the accused systems, devices, functionalities, and processes are developed and/or located in Fort Worth. For example, the marketing team charged with emails to American's customers—the accused infringing process for at least three of the Patents—principally works in American's headquarters in Fort Worth. Similarly, the information technology team responsible for the technical aspects of the accused infringing functionality for the remaining Patents principally works in American's Fort Worth headquarters as well.

## THE PATENTS

20.     Advanced Transactions characterizes the Patents as "broadly relat[ing] to online marketing and e-commerce systems." Ex. 9 at 2.

A.      **The '555 Patent Family**

21.     On their faces, the '555, '594, and '950 Patents purport to be "directed to a method and system for generating and tracking an email campaign." Ex. 1 at 3:12–13; Ex. 2 at 3:16–17; Ex. 3 at 3:16–17. Advanced Transactions concedes that all three patents share the "same" specification. Ex. 9 at ¶¶ 34, 40.

1.      **The '555 Patent — System and Method Related to Generating and Tracking an Email Campaign**

22.     The '555 Patent is entitled "System and Method Related to Generating and Tracking an Email Campaign." Ex. 1 at 1. USPTO assignment records indicate that the '555 Patent is assigned to Advanced Transactions.

2.      **The '594 Patent — System and Method Related to Generating an Email Campaign**

23.     On its face, the '594 Patent purports to be a continuation of the '555 Patent. Ex. 2 at ¶ 63. The '594 Patent is entitled "System and Method Related to Generating an Email Campaign." Ex. 2 at 1. USPTO assignment records indicate that the '594 Patent is assigned to Advanced Transactions.

3.      **The '950 Patent — System and Method Related to Generating and Tracking an Email Campaign**

24.     The '950 Patent on its face purports to be a continuation of the '594 Patent, and that the '594 Patent is a continuation of the '555 Patent. Ex. 3 at ¶ 63. The '950 Patent is entitled "System and Method Related to Generating and Tracking an Email Campaign." Ex. 3 at 1. USPTO assignment records indicate that the '950 Patent is assigned to Advanced Transactions.

### B.   The '057 Patent Family

25.     On their faces, the '057, '519, '608, and '529 Patents purport to be related to "electronic handheld devices . . . and electronic commerce." Ex. 4 at 1:18-20. Advanced Transactions concedes that all four patents share the "same" specification. Ex. 9 at ¶¶ 75, 81, 87.

#### 1.   The '057 Patent — Third-Party Provider Method and System

26.      The '057 Patent is entitled "Third-Party Provider Method and System." Ex. 4. USPTO assignment records indicate that the '057 Patent is assigned to Advanced Transactions.

#### 2.   The '519 Patent — Third-Party Provider Method and System

27.     The '519 Patent is entitled "Third-Party Provider Method and System." Ex. 6. USPTO assignment records indicate that the '519 Patent is assigned to Advanced Transactions.

#### 3.   The '608 Patent — Third-Party Provider Method and System

28.     The '608 Patent is entitled "Third-Party Provider Method and System." Ex. 7. USPTO assignment records indicate that the '608 Patent is assigned to Advanced Transactions.

#### 4.   The '529 Patent — Third-Party Provider Method and System

29.     The '529 Patent is entitled "Third-Party Provider Method and System." Ex. 8. USPTO assignment records indicate that the '529 Patent is assigned to Advanced Transactions.

### C.   The '736 Patent — Global Electronic Commerce System

30.     The '736 Patent is entitled "Global Electronic Commerce System." Ex. 5. USPTO assignment records indicate the '736 Patent assigned to Advanced Transactions.

### COUNTS I–III: NONINFRINGEMENT OF THE '555 FAMILY

31.     Advanced Transaction's Letter accuses American's AAdvantage Program enrollment process hosted on AA.com ("Enrollment Process") of infringing at least the '555 Patent's claim 1, '594 Patent's claim 1, and '950 Patent's claim 21.

32.    On its face, the '555 Family Specification explains "the present invention is directed to a method and system for generating and tracking an email campaign." Ex. 1 at 3:12–13. An *email campaign*, as defined by the specification, requires "[a] system for sending email to a number of email targets" for "purposes such as marketing, information acquisition, or otherwise." *Id.* at 1:22–25. The specification further explains that prior art email campaigns "suffered from difficulties in locating a pool of relevant individuals to be contacted," as well as in "tailoring the large number of required email messages to the individuals for more effective contact." *Id.* at 1:26–33. The specification purports to solve those problems by using "[a]n email campaign generator" that "generates an email campaign template from an email target database." *Id.* at 1:49–51. From there, "[a]n email campaign engine generates a custom email corresponding to each of the email targets in the email target database," the email campaign engine "form[ing]" the custom emails "from the email campaign template." *Id.* at 1:52–55. The specification's Figure 9 "illustrat[es] a sequence of operation according to an embodiment of the present invention":



*Id.* at 2:54–55 & Fig.9.

33.     An *email campaign template*, as defined by the '555 Family Specification, is formed from "a text message file **320** and a configuration file **330**":



FIG.3A

*Id.* at 5:16–17 & Fig.3A. The "[e]mail campaign engine . . . copies [the] text message file **320**, and replaces each custom tag in [the] text message file **320** with corresponding data in [the] configuration file **330**[] to generate [a] custom email message." *Id.* at 6:66–7:2. A *configuration file*, as defined by the specification, "contain[s] data related to each email target or recipient" and that "data for each email target is insertable in the message template created from [the] text message file." *Id.* at 5:31–34.

## COUNT I: NONINFRINGEMENT OF THE '555 PATENT

34.     American repeats and re-alleges each and every allegation contained in paragraphs 1–33 of this Complaint as if fully set forth herein.

35.     Advanced Transactions accuses American's Enrollment Process of infringing the '555 Patent's claim 1. In support, Advanced Transactions points to the AAdvantage Program enrollment page located at https://www.aa.com/loyalty/enrollment/enroll ("Enrollment Page").

Ex. 9 at ¶ 91. The Enrollment Page presents a form that prompts the entry of personal information—for example, "Your name," "Address," and "Email and phone." *Id.* Advanced Transactions also points to an email sent from loyalty@loyalty.ms.aa.com ("Welcome Email"). *Id.* at ¶ 90. On its face, the Welcome Email's subject line reads "Welcome to the AAdvantage Program," and includes as its salutation "Hello JOHN." *Id.*

36.   American's Enrollment Process has not and does not infringe the '555 Patent because it does not perform the methods claimed in at least claim 1. Claim 1 states:

> 1. A method for conducting an email campaign, comprising the steps of:
>
> > (1) receiving an email target database;
> >
> > (2) generating an email campaign template related to at least one email target in the received email target database, wherein step (2) comprises:
> >
> > > (a) generating a message template, and
> > >
> > > (b) generating a configuration file to contain data related to each of the at least one email target, wherein the data is insertable in the generated message template;
> >
> > (3) sending to each of the at least one email target a corresponding custom email, wherein the custom email is formed from the email campaign template; and
> >
> > (4) tracking the custom email sent to each of the at least one email target.

Ex. 1 at claim 1.

37.   American's Enrollment Process does not perform the method of claim 1 at least because it does not meet the *email campaign* limitation. A person of ordinary skill in the art would understand that, in the context of claim 1, an email campaign requires that "each of the at least one email target" existing in "an email target database" be sent "a corresponding custom email."

American performs its Enrollment Process not once, as part of a campaign, but as part of an individual enrollment process. The Welcome Email is triggered each time an individual member enrolls into the AAdvantage Program. Therefore, American's Enrollment process does not perform an *email campaign* as understood in the context of the '555 Patent.

38.     American's Enrollment Process does not perform the method of claim 1 at least because it does not meet the *message template* limitation. A person of ordinary skill in the art would understand that, in the context of claim 1, a message template cannot preexist an email campaign because, among other reasons, claim 1 requires *generating a message template* only after *receiving an email target database*. American's Enrollment Process uses a Welcome Email based on a common design that preexists any member receiving it enrolling into the AAdvantage Program. Therefore, American's Enrollment Process does not use a *message template* as understood in the context of the '555 Patent.

39.     In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy within the meaning of 28 U.S.C. § 2201 between American and Advanced Transactions regarding whether American has performed or performs any method of any claim of the '555 Patent in an infringing way.

40.     American is thus entitled to a declaratory judgment that its Enrollment Process does not infringe any claims of the '555 Patent directly, indirectly, literally, or by equivalence.

## COUNT II: NONINFRINGEMENT OF THE '594 PATENT

41.     American repeats and re-alleges each and every allegation contained in paragraphs 1–40 of this Complaint as if fully set forth herein.

42.     Advanced Transactions accuses American's Enrollment Process of infringing the '594 Patent's claim 1. In support, Advanced Transactions again points to American's Enrollment

Page. Ex. 9 at ¶ 102. The Enrollment Page presents a form that prompts the entry of personal information—for example, "Your name," "Address," and "Email and phone." *Id.* Advanced Transactions also points again to the Welcome Email. *Id.* at ¶ 101. On its face, the Welcome Email's subject line reads "Welcome to the AAdvantage Program," and includes as its salutation "Hello JOHN." *Id.*

43.     American's Enrollment Process has not and does not infringe the '594 Patent because it does not perform the methods claimed in at least claim 1. Claim 1 states:

> 1. A method for conducting an email campaign, comprising the steps of:
>
>> (1) receiving an email target database;
>>
>> (2) generating an email campaign template related to at least one email target in the received email target database, wherein step (2) comprises:
>>
>>> (a) generating a message template, and
>>>
>>> (b) generating a configuration file to contain data related to each of the at least one email target, wherein the data is insertable in the generated message template; and
>>
>> (3) sending to each of the at least one email target a corresponding custom email, wherein the custom email is formed from the email campaign template.

Ex. 2 at claim 1.

44.     American's Enrollment Process does not perform the method of claim 1 at least because it does not meet the *email campaign* limitation. A person of ordinary skill in the art would understand that, in the context of claim 1, an email campaign requires that "each of the at least one email target" existing in "an email target database" be sent "a corresponding custom email." American performs its Enrollment Process not once, as part of a campaign, but as part of an individual enrollment process. The Welcome Email is triggered each time an individual member

14

enrolls into the AAdvantage Program. Therefore, American's Enrollment process does not perform an *email campaign* as understood in the context of the '594 Patent.

45.     American's Enrollment Process does not perform the method of claim 1 at least because it does not meet the *message template* limitation. A person of ordinary skill in the art would understand that, in the context of claim 1, a message template cannot preexist an email campaign because, among other reasons, claim 1 requires *generating a message template* only after *receiving an email target database*. American's Enrollment Process uses a Welcome Email based on a common design that preexists any member receiving it enrolling into the AAdvantage Program. Therefore, American's Enrollment Process does not use a *message template* as understood in the context of the '594 Patent.

46.     In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy within the meaning of 28 U.S.C. § 2201 between American and Advanced Transactions regarding whether American has performed or performs any method of any claim of the '594 Patent in an infringing way.

47.     American is thus entitled to a declaratory judgment that its Enrollment Process does not infringe any claims of the '594 Patent directly, indirectly, literally, or by equivalence.

**COUNT III: NONINFRINGEMENT OF THE '950 PATENT**

48.     American repeats and re-alleges each and every allegation contained in paragraphs 1–47 of this Complaint as if fully set forth herein.

49.     Advanced Transactions accuses American's Enrollment Process of infringing the '950 Patent's claim 21. In support, Advanced Transactions again points to American's Enrollment Page. Ex. 9 at ¶ 112. The Enrollment Page presents a form that prompts the entry of personal information—for example, "Your name," "Address," and "Email and phone." *Id.* Advanced

Transactions also points again to the Welcome Email. *Id.* at ¶ 111. On its face, the Welcome Email's subject line reads "Welcome to the AAdvantage Program," and includes as its salutation "Hello JOHN." *Id.*

50.     American's Enrollment Process has not and does not infringe the '950 Patent because it does not perform the methods claimed in at least claim 21. Claim 21 states:

> 21. A method for producing a custom email template, comprising:
>
>> receiving, at a computing device, email addresses for a plurality of target recipients of custom email messages; and
>>
>> producing at the computing device, as the custom email template, a configuration file and a message file,
>>
>> wherein the configuration file includes, for each of the plurality of target recipients, data related to the target recipient and a custom uniform resource locator unique to the target recipient,
>>
>> wherein the message file includes a textual message for each of the custom email messages, and
>>
>> wherein the message file includes a plurality of custom tags configured to receive, for each target recipient, the data related to the target recipient and an executable link configured to receive the custom uniform resource locator unique to the target recipient.

Ex. 3 at claim 21.

51.     American's Enrollment Process does not perform the method of claim 21 at least because it does not meet the *message file* limitation. A person of ordinary skill in the art would understand that, in the context of claim 21, a message file cannot preexist a *custom email template* because, among other reasons, claim 21 requires *producing* the *message file* only after *receiving* the *email addresses for a plurality of target recipients of custom email messages*. American's Enrollment Process uses a Welcome Email that preexists any member receiving it enrolling into

the AAdvantage Program. Therefore, American's Enrollment Process does not use a *message file* as understood in the context of the '950 Patent.

52.     American's Enrollment Process also does not perform the method of claim 21 at least because it does not meet the *computing device* limitation. A person of ordinary skill in the art would understand that, in the context of claim 21, the claimed method requires performing its limitations exclusively on a single *computing device* because, among other reasons, claim 21 plainly refers to the same "a[/the] computing device" to both *receive* email addresses and *produce* the *custom email template*. American's Enrollment Process uses a plurality of computing devices. Therefore, American's Enrollment Process does not use a *computing device* as understood in the context of the '950 Patent.

53.     In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy within the meaning of 28 U.S.C. § 2201 between American and Advanced Transactions regarding whether American has performed or performs any method of any claim of the '950 Patent in an infringing way.

54.     American is thus entitled to a declaratory judgment that its Enrollment Process does not infringe any claims of the '950 Patent directly, indirectly, literally, or by equivalence.

**COUNT IV–VII: NONINFRINGEMENT OF THE '057 FAMILY**

55.     Advanced Transaction's Letter accuses American's iOS and Android applications ("American's Applications") of infringing at least the '057 Patent's claim 1, '519 Patent's claim 1, '608 Patent's claim 21, and '529 Patent's claim 8.

56.     On its face, the '057 Family Specification defines a *point of sale device* as a device at "a retail establishment." *E.g.*, Ex. 4 at 1:31–33. The figures further discuss using a POS system

using a scanner which further indicates that the point of sale device is a cash register or similar device. *See, e.g.*, *id.* Figs. 5–12, 25.



Ex. 4 at Figs. 5 and 25.

## COUNT IV: NONINFRINGEMENT OF THE '057 PATENT

57.     American repeats and re-alleges each and every allegation contained in paragraphs 1–56 of this Complaint as if fully set forth herein.

58.     Advanced Transactions accuses American of infringing the '057 Patent's claim 1 when users use a smart phone with American's Applications installed to make payments using "American Airlines Coupons, American Airlines AAdvantage Rewards, American Airlines Payment Wallet, [and] American Airlines Gift Cards." Ex. 9 at ¶ 121. In support, Advanced Transactions points to the same four screenshots of the iOS app store, the Android app store, and from American's Applications. *Id*. at ¶¶ 121–126. American's Applications do not infringe as they do not store the negotiable credit on the device.

18



*See, e.g., id.* at ¶¶ 121–126

59.    In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy within the meaning of 28 U.S.C. § 2201 between American and Advanced Transactions regarding whether American has performed or performs any method of any claim of the '057 Patent in an infringing way.

60.    American has not and does not infringe the '057 Patent because American's Applications do not perform the methods claimed in at least claim 1. Claim 1 states:

> 1. A method for processing negotiable economic credits through a wireless hand held device, the method comprising:
>
> > storing a filter in a memory of a hand held device, wherein the hand held device comprises a display, user controls, the memory, and a wireless controller, wherein the wireless controller is configured to communicate with a wireless network, and wherein the filter is configurable via the user controls;
> >
> > receiving at least one negotiable economic credit from the wireless network at the hand held device based on the stored filter;
> >
> > storing the at least one negotiable economic credit in the memory of the hand held device;
> >
> > retrieving the at least one negotiable economic credit; and

> transferring the at least one negotiable economic credit via
> the wireless network.

Ex. 4 at claim 1.

61.    American's Applications do not store the alleged negotiable credits—such as American's Coupons, AAdvantage Rewards, or gift cards—on the handheld device.

62.    Thus American has not and does not infringe the '057 Patent's claim 1 at least because American's Applications do not store negotiable credits as understood in the context of the '057 Patent. Further, independent method claim 1 requires "storing the at least one negotiable economic credit in the memory of the hand held device; retrieving the at least one negotiable economic credit; and transferring the at least one negotiable economic credit via the wireless network." Ex. 4 at claim 1. Yet, because American's Applications do not store the credit they also cannot retrieve the credit or transfer the credit.

63.    American is thus entitled to a declaratory judgment that American's Applications and other features do not infringe any claims of the '057 Patent directly, indirectly, literally, or by equivalence.

**COUNT V: NONINFRINGEMENT OF THE '519 PATENT**

64.    American repeats and re-alleges each and every allegation contained in paragraphs 1–63 of this Complaint as if fully set forth herein.

65.    Advanced Transactions accuses American of infringing the '519 Patent's claim 1 when users use a smart phone with American's Applications installed to make payments using "American Airlines Coupons, American Airlines AAdvantage Rewards, American Airlines Payment Wallet, [and] American Airlines Gift Cards." Ex. 9 at ¶ 138. In support, Advanced Transactions points to the same four screenshots of the iOS app store, the Android app store, and

from American's Applications. *Id.* at ¶¶ 138–144. American's Applications do not infringe as it does not store the negotiable credit on the device.



*See, e.g., id.* at ¶¶ 138–144.

66.    In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy within the meaning of 28 U.S.C. § 2201 between American and Advanced Transactions regarding whether American has performed or performs any method of any claim of the '519 Patent in an infringing way.

67.    American has not and does not infringe the '519 Patent because American's Applications do not perform the methods claimed in at least claim 22. Claim 22 claims:

22. A method, comprising:

requesting at least one negotiable economic credit using a hand held device;

receiving the at least one negotiable economic credit at the hand held device;

storing the at least one negotiable economic credit in a memory of the hand held device;

retrieving the at least one negotiable economic credit from the memory of the hand held device;

> sending the at least one negotiable economic credit using the
> hand held device; and
>
> after sending the at least one negotiable economic credit,
> receiving, at the hand held device, a message indicating a
> negotiable economic credit was utilized.

Ex. 6 at claim 22.

68.     American's Applications do not store the alleged negotiable credits—such as American's Coupons, AAdvantage Rewards, or gift cards—on the handheld device. Further, American's Applications do not have any ability to interact with a point of sale device, such as a ticket kiosk or "point-of-sale device located in an American Airlines retail store location," so that they can transmit negotiable economic credit and authentication information.

69.     Thus, American has not and does not infringe the '519 Patent's claim 22 at least because American's Applications do not store negotiable credits as understood in the context of the '519 Patent. Further, independent method claim 22 requires "storing the at least one negotiable economic credit in a memory of the hand held device; retrieving the at least one negotiable economic credit from the memory of the hand held device; sending the at least one negotiable economic credit using the hand held device." Ex. 6 at claim 22. Yet, because American's Applications do not store the credit, they also cannot retrieve the credit or send the credit.

70.     American is thus entitled to a declaratory judgment that American's Applications do not infringe any claims of the '519 Patent directly, indirectly, literally, or by equivalence.

## COUNT VI: NONINFRINGEMENT OF THE '608 PATENT

71.     American repeats and re-alleges each and every allegation contained in paragraphs 1–70 of this Complaint as if fully set forth herein.

72.     Advanced Transactions accuses American of infringing the '608 Patent's claim 10 when users use a smart phone with American's Applications installed to make payments using

"American Airlines Coupons, American Airlines AAdvantage Rewards, American Airlines Payment Wallet, [and] American Airlines Gift Cards." Ex. 9 at ¶ 148. In support, Advanced Transactions points to the same four screenshots of the iOS app store, the Android app store, and from American's Applications. *Id*. at ¶¶ 148–152. American's Applications do not infringe as they do not store the negotiable credit on the device.



*See, e.g.*, *id*. at ¶¶ 148–152.

73.     In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy within the meaning of 28 U.S.C. § 2201 between American and Advanced Transactions regarding whether American has performed or performs any method of any claim of the '608 Patent in an infringing way.

74.     American has not and does not infringe the '608 Patent because American's Applications do not perform the methods claimed in at least claim 10. Claim 10 requires:

> 10. A method comprising:
>
>> an electronic, portable device transmitting, via a network connection, to a computer system, a request for issuing a data structure corresponding to an account associated with the electronic, portable device;

in response to the request, receiving, by the electronic, portable device, via the network connection, the data structure, wherein the data structure encodes information indicative of a particular item of negotiable economic credit and further includes authentication information usable to authenticate the particular item of negotiable economic credit;

detecting, by the electronic, portable device, that a transaction has been initiated by a user for the electronic, portable device;

in response to the detecting, the electronic, portable device transmitting, via the network connection, the information indicative of the particular item of negotiable economic credit and the authentication information to a point-of-sale (POS) device, and instructing the POS device to apply the particular item of negotiable economic credit to the transaction, wherein the POS device is one of a plurality of POS devices located in different establishments; and

receiving, by the electronic, portable device, authentication information indicating that the particular item of negotiable economic credit has been authenticated by the POS device and applied to the transaction.

Ex. 7 at claim 10.

75.    American's Applications do not receive the alleged negotiable credit—such as American's Coupons, AAdvantage Rewards, or gift cards—or anything like the claimed "data structure" on the handheld device. Further, American's Applications do not have any ability to interact with a point-of-sale device, such as a ticket kiosk or "point-of-sale device located in an American Airlines retail store location," so that they can transmit negotiable economic credit and authentication information.

76.    Thus, American has not and does not infringe the '608 Patent's claim 10 at least because American's Applications do not store negotiable credits or similar data structures as understood in the context of the '608 Patent. Further, independent method claim 10 requires "[the]portable device transmitting, via the network connection, the information indicative of the

particular item of negotiable economic credit and the authentication information to a point-of-sale (POS) device." Ex. 7 at claim 10. Yet, because American's Applications do not store the credit and because American's Applications cannot communicate with a POS system, a device with American's Applications cannot transmit the credit to a POS system.

77.     American is thus entitled to a declaratory judgment that American's Applications do not infringe any claims of the '608 Patent directly, indirectly, literally, or by equivalence.

## COUNT VII: NONINFRINGEMENT OF THE '529 PATENT

78.     American repeats and re-alleges each and every allegation contained in paragraphs 1–77 of this Complaint as if fully set forth herein.

79.     Advanced Transactions accuses American of infringing the '529 Patent's claim 8 when users use a smart phone with American's Applications installed to make payments using "American Airlines Coupons, American Airlines AAdvantage Rewards, American Airlines Payment Wallet, [and] American Airlines Gift Cards." Ex. 9 at ¶ 157. In support, Advanced Transactions points to the same four screenshots of the iOS app store, the Android app store, and from American's Applications. *Id.* at ¶¶ 157–160. American's Applications do not infringe as it does not store the negotiable credit on the device.



*See, e.g.*, *id.* at ¶¶ 157–160.

80.    In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy within the meaning of 28 U.S.C. § 2201 between American and Advanced Transactions regarding whether American has performed or performs any method of any claim of the '529 Patent in an infringing way.

81.    American has not and does not infringe the '529 Patent because American's Applications do not perform the methods claimed in at least claim 8. Claim 8 requires:

> 8. A method comprising:
>
> > storing, by an electronic, portable device, a data structure, wherein the data structure encodes information indicative of a particular item of negotiable economic credit and further includes authentication information usable to authenticate the particular item of negotiable economic credit;
> >
> > detecting, by the electronic, portable device, that a transaction has been initiated by a user of the electronic, portable device;
> >
> > in response to the detecting, the electronic, portable device transmitting the information indicative of the particular item of negotiable economic credit and the authentication information to a point-of-sale (POS) device, and instructing the POS device to apply the particular item of negotiable economic credit to the transaction such that a discount associated with the transaction is received by the user of the electronic, portable device; and
> >
> > receiving, by the electronic, portable device, a message indicating that the particular item of negotiable economic credit has been authenticated by the POS device and applied to the transaction.

Ex. 8 at claim 8.

82.    American's Applications do not receive the alleged negotiable credit—such as American's Coupons, AAdvantage Rewards, or gift cards—or anything like the claimed "data

structure" on the handheld device. Further, American's Applications do not have any ability to interact with a point of sale device, such as a ticket kiosk or "point-of-sale device located in an American Airlines retail store location," so that they can transmit negotiable economic credit and authentication information.

83.     Thus, American has not and does not infringe the '529 Patent's claim 8 at least because American's Applications do not store negotiable credits or similar data structures as understood in the context of the '529 Patent. Further, independent method claim 8 requires "[the] portable device transmitting the information indicative of the particular item of negotiable economic credit and the authentication information to a point-of-sale (POS) device." Ex. 8 at claim 8. Yet, because American's Applications do not store the credit and because American's Applications cannot communicate with a POS system, a device with American's Applications cannot transmit the credit to a POS system.

84.     American is thus entitled to a declaratory judgment that American's Applications do not infringe any claims of the '529 Patent directly, indirectly, literally, or by equivalence.

**COUNT VIII: NONINFRINGEMENT OF THE '736 PATENT**

85.     American repeats and re-alleges each and every allegation contained in paragraphs 1–84 of this Complaint as if fully set forth herein.

86.     Advanced Transactions accuses American of infringing the '736 Patent's claim 1 when one of its computers, such as a webserver, receives a request to access the page wherein that request also include a specific "locale identifier value." Ex. 9 at ¶ 131. In support, Advanced Transactions points to two screenshots of the American website and what appears to be hypertext markup language ("HTML"). *Id*. at ¶¶ 130–134.




87.    In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy within the meaning of 28 U.S.C. § 2201 between American and Advanced Transactions regarding whether American has performed or performs any method of any claim of the '736 Patent in an infringing way.

88.    American has not and does not infringe the '736 Patent because its website and servers do not perform the methods claimed in at least claim 1. Claim 1 states:

> 1. A method in a computing system having a processor, the method comprising:
>
> receiving a request for a web page, the request including a locale identifier value, the locale identifier value referencing a geographic location associated with a referral website and a language associated with a webpage of the referral website containing a link used to generate the request;
>
> with the processor, retrieving a version of marketing information identified by processing the locale identifier value included in the request for the web page;
>
> with the processor, generating the requested web page to include information representative of the retrieved version of the marketing information; and
>
> transmitting the generated web page.

Ex. 5 at claim 1.

28

89.     For example, American's website and webserver does not use a locale identifier value as specifically defined in the specification. The '736 Patent defines the "Locale ID (LCID) [a]s a 32-bit numeric value in hexadecimal that identifies a locale. Locale values are specified by constants programmed within the Microsoft (RTM) server. The LCID value associated with a Referral Website serves to identify the locale-specific country/language pair." Ex. 5 at 23:61-66. Upon information and belief, American does not use such a value and thus cannot "receiv[e] a request for a web page, the request including a locale identifier value, the locale identifier value referencing a geographic location associated with a referral website and a language associated with a webpage of the referral website containing a link used to generate the request" as required by the claims.

90.     American is thus entitled to a declaratory judgment that its website and webserver does not infringe any claims of the '736 Patent directly, indirectly, literally, or by equivalence.

## PRAYER FOR RELIEF

WHEREFORE, American respectfully requests that this Court enter judgment in its favor as follows and award American the following relief:

(a)     a declaration that at least American's Enrollment Process has not infringed and is not infringing any claim of the '555 Patent;

(b)     a declaration that at least American's Enrollment Process has not infringed and is not infringing any claim of the '594 Patent;

(c)     a declaration that at least American's Enrollment Process has not infringed and is not infringing any claim of the '950 Patent;

(d)     a declaration that at least American's Applications have not infringed and are not infringing any at least claim of the '057 Patent;

(e)     a declaration that at least American's Applications have not infringed and are not infringing any claim of the '519 Patent;

(f)     a declaration that at least American's Applications have not infringed and are not infringing any claim of the '608 Patent;

(g)     a declaration that at least American's Applications have not infringed and are not infringing any claim of the '529 Patent;

(h)     a declaration that at least American's website and servers have not infringed and are not infringing any claim of the '736 Patent;

(i)     a declaration that this case is an exceptional case and awarding reasonable costs and attorneys' fees to American pursuant to 35 U.S.C. § 285;

(j)     a declaration that American is the prevailing party and awarding its costs under 28 U.S.C. § 1920, FED. R. CIV. P. 54, and all other applicable law and statutes;

(k)     pre-judgment and post-judgment interest at the maximum amount permitted by law; and

(l)     all other relief, in law or equity, to which American is entitled.

## DEMAND FOR JURY TRIAL

American hereby demands a jury trial for all issues so triable.

Dated: June 8, 2023.                              **MCKOOL SMITH, P.C.**

                                                  /s/ *John B. Campbell*
                                                  _____
                                                  John B. Campbell
                                                  Texas State Bar No. 24036314
                                                  jcampbell@McKoolSmith.com
                                                  Geoffrey L. Smith
                                                  Texas State Bar No. 24041939
                                                  gsmith@McKoolSmith.com
                                                  George T. Fishback, Jr.
                                                  Texas State Bar No. 24120823
                                                  gfishback@McKoolSmith.com
                                                  Kyle Ryman
                                                  Texas State Bar No. 24125394
                                                  kryman@McKoolSmith.com
                                                  **MCKOOL SMITH, P.C.**
                                                  303 Colorado Street Suite 2100
                                                  Austin, TX 78701
                                                  Telephone: (512) 692-8700
                                                  Telecopier: (512) 692-8744

                                                  Dee J. Kelly, Jr.
                                                  Texas State Bar No. 11217250
                                                  dee.kelly@kellyhart.com
                                                  Michael D. Anderson
                                                  Texas State Bar No. 24031699
                                                  michael.anderson@kellyhart.com
                                                  **KELLY HART & HALLMAN LLP**
                                                  201 Main Street Suite 2500
                                                  Fort Worth, TX 76102
                                                  Telephone: (817) 332-2500
                                                  Telecopier: (817) 878-9280

                                                  ATTORNEYS FOR Plaintiff
                                                  AMERICAN AIRLINES, INC.